UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

TOR EKELAND,

                Plaintiff,

    v.

NEW YORK CITY POLICE ("NYPD") DETECTIVE PELOCKA Y. BINNS, in her individual capacity; NYPD DETECTIVE EDWIN EXILHOMME, in his individual capacity,

                Defendants.

**MEMORANDUM AND ORDER**
22-CV-3485 (HG)

**HECTOR GONZALEZ**, United States District Judge:

    This is an action brought by Plaintiff Tor Ekeland ("Plaintiff") against New York City Police Department ("NYPD") Detectives Pelocka Y. Binns and Edwin Exilhomme (collectively, "Defendants") asserting violations of 42 U.S.C. § 1983 ("Section 1983") for: (i) false arrest; (ii) malicious prosecution; and (iii) intentional interference with a familial relationship. ECF No. 1 ("Complaint"). Presently before the Court is Defendants' motion for judgment on the pleadings pursuant to Rule 12(c) (the "Motion"). ECF No. 13. For the reasons set forth below, the Motion is granted in part and denied in part.

## BACKGROUND

    Plaintiff Tor Ekeland is a New York attorney. Compl. ¶ 14. He has two minor children, "TE" and "SE," who he shares legal and physical custody of with his ex-wife. *Id.* ¶ 15. The children alternate between each parents' household every week. *Id*.

    On the morning of January 6, 2021, Plaintiff took TE to his law office. *Id.* ¶ 21. While there, TE logged into virtual school on a laptop that TE used for schoolwork while Plaintiff worked. *Id.* ¶¶ 21–22, 24. Later that morning, Plaintiff "learned that TE hadn't been honest . . . about turning in . . . assignments," and, "in response" to this revelation, Plaintiff physically broke

the laptop, as well as a pair of headphones TE had been using.  *Id*.  Mr. Ekeland then gave TE another laptop to finish that day's schoolwork.  *Id*. ¶ 26.

On or about January 18, 2021, Plaintiff's ex-wife reported to the NYPD that Plaintiff had "broken TE's laptop and headphones."  *Id*. ¶ 27.  She informed Detective Binns that Plaintiff was TE's father, that TE was a minor, and that the incident occurred while TE was in Plaintiff's care.  *Id*. ¶¶ 28–30.  Detective Binns then issued an NYPD I-Card stating that there was probable cause to arrest Mr. Ekeland.  *Id*. ¶ 37.

In early March 2021, Detective Binns contacted Plaintiff to arrange for his surrender at the 84th Precinct "for violating New York Penal Law Section 145.00, Criminal Mischief in the Fourth Degree, stemming from his having allegedly broken TE's computer and headphones."  *Id*. ¶¶ 38–41.  In response, Plaintiff's attorney sent a letter to Detective Binns asserting that probable cause did not exist to arrest Plaintiff.  *Id*. ¶¶ 42–48.  Detective Binns informed Plaintiff's attorney that she had received the letter but still planned to arrest Plaintiff.  *Id*. ¶ 52.  Plaintiff's attorney requested Plaintiff receive a Desk Appearance Ticket, but the request was denied, and Plaintiff was informed he would have to go through the standard arraignment process.  *Id*. ¶ 53.

Plaintiff surrendered himself to the NYPD's 84th Precinct in Brooklyn on March 16, 2021, where he was officially arrested for Criminal Mischief in the Fourth Degree by Detective Exilhomme on the direction of Detective Binns.  *Id*. ¶¶ 56–57, 60.  Plaintiff was later charged with Criminal Mischief in the Fourth Degree, Endangering the Welfare of a Child, and Harassment in the Second Degree.  *Id*. ¶¶ 61–66.  Plaintiff was held in central booking for 26 hours before his arraignment on March 17, 2021.  On July 26, 2021, the Brooklyn District Attorney's Office dismissed the complaint against Plaintiff and sealed it.  *Id*. ¶ 69–70.

On June 14, 2022, Plaintiff filed the instant action.  ECF No. 1.  On September 20, 2022, Defendants filed a letter requesting a premotion conference on their anticipated motion for judgment on the pleading.  ECF No. 11.  In lieu of a premotion conference, the Court set a briefing schedule on Defendants' motion.  ECF Minute Entry, September 22, 2022.  Defendants filed their motion for judgment on the pleadings on October 10, 2022.  ECF No. 15.  Plaintiff filed his opposition to the Motion on December 30, 2022.  ECF No. 19.  Defendants filed their reply in support of the Motion on January 17, 2023.  ECF No. 21.

## LEGAL STANDARD

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that for granting a Rule 12(b)(6) motion for failure to state a claim." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 301 (2d Cir. 2021).[1]  "To survive a [12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Judgment on the pleadings is not appropriate if there are issues of fact which if proved would defeat recovery, even if the trial court is convinced that the party opposing the Motion is unlikely to prevail at trial." *Lively,* 6 F.4th at 301.

As with a 12(b)(6) motion, a district court ruling on a 12(c) motion must limit its consideration to the factual allegations contained in the complaint, although it may "consider

---

[1] Unless noted, case law quotations in this order accept all alterations and omit all internal quotation marks, citations, and footnotes.

3

extrinsic material that the complaint incorporates by reference, that is integral to the complaint, or of which courts can take judicial notice." *Lively,* 6 F.4th at 304–05.  At the motion to dismiss stage, the job of the district court "is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020).  "A motion for summary judgment, rather than a motion to dismiss, is the proper procedural device to consider matters outside the pleadings, such as facts unearthed in discovery, depositions, affidavits, statements, and any other relevant form of evidence." *Jackson v. Nassau Cnty.*, 552 F. Supp. 3d 350, 365 (E.D.N.Y. 2021); *see also Global Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 155 (2d Cir. 2006) ("The purpose of Rule 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits. The Rule thus assesses the legal feasibility of the complaint but does not weigh the evidence that might be offered to support it.").

## **DISCUSSION**

### I.     **Domestic Incident Report and Receipt**

As an initial matter, the Court must decide whether it may consider the domestic incident report (the "Report") and credit card receipt for the laptop (the "Receipt") that Defendants attach as exhibits to their Motion at this stage of the proceedings.  *See* ECF No. 14-2 (Domestic incident Report); ECF No. 14-3 (Laptop Receipt).  Defendants argue that the Report and the Receipt are "integral to the pleadings." [2]  ECF No. 15 at 5.

---

[2]     The Court notes that the Plaintiff does not argue that the Court should not consider the Report or the Receipt.  Instead he argues that, even considering the materials, the Motion should

It is well established that "[e]ven when a plaintiff chooses not to attach a written instrument as an exhibit or incorporate it by reference, "if it is one upon which the plaintiff solely relies and which is integral to the complaint, the court may take the document into consideration in deciding the defendant's motion to dismiss." *Jackson*, 552 F. Supp. 3d at 365–66.  "To be incorporated by reference, the complaint must make a clear, definite and substantial reference to the documents . . . [and] [t]o be integral to a complaint, the plaintiff must have (1) actual notice of the extraneous information and (2) relied upon the documents in framing the complaint." *Allstate Ins. Co. v. Rozenberg*, 771 F. Supp. 2d 254, 268 (E.D.N.Y. 2011); *see also Global Network*, 458 F.3d at 156 ("A necessary prerequisite to a finding that materials are integral to a complaint is that the plaintiff rely on the terms and effect of the document in drafting the complaint . . . ; mere notice or possession is not enough.").  "A document is not integral simply because its contents are highly relevant to a plaintiff's allegations, but only when it is clear that the plaintiff relied on the document in preparing his complaint." *Joyner v. Cnty. of Cayuga*, No. 20-cv-60, 2020 WL 1904088, at *3 (N.D.N.Y. Apr. 17, 2020).

The Court finds that the Report, ECF No. 14-2, is incorporated by reference.  The Complaint notes that "[o]n or about January 18, 2021, [Plaintiff's ex-wife] contacted the NYPD's 84th Precinct and informed Detective Binns that Mr. Ekeland had broken TE's laptop and headphones."  Compl. ¶ 27.  The Complaint then references several other key details contained in the Report, such as the age of Plaintiff's minor child and that Plaintiff's child was in his care at the time of the incident.  Id. ¶¶ 28–33.  The Complaint thus "gives the exact date . . . ,

---

still be denied.  ECF No. 19 at 13.  Still, because it is the responsibility of the Court to decide exactly what materials should be considered on a motion to dismiss, it chooses to analyze both documents to determine whether they are incorporated into the complaint.

the author, the medium, and the key takeaway" of the Report, *Parkinson v. 1199 SEIU Nat'l Benefit Fund*, No. 22-cv-1004, 2023 WL 2499133, at *3 (E.D.N.Y. Mar. 14, 2023), which the Court considers a "clear, definite and substantial reference." *Allstate*, 771 F. Supp. 2d at 268. Accordingly, the Court finds the Complaint incorporates the Report by reference.

However, the Complaint makes no reference to the Receipt, ECF No. 14-3, nor has the Plaintiff attached the Receipt to the Complaint, in whole or in part. Nor is there any evidence that Plaintiff had the Receipt in his possession or was even aware of the Receipt when drafting the Complaint. In fact, the Complaint explicitly alleges that Detective Binns *never* inquired as to who owned the laptop in question. Compl. ¶ 31 ("Upon information and belief, Detective Binns *never* inquired of [Plaintiff's ex-wife], TE, or anyone for that matter, as to who exactly purchased the video gaming laptop that TE was using in Mr. Ekeland's office.") (emphasis in original). The Second Circuit has held that, at the motion to dismiss stage, district courts should not rely on external materials which "controvert[] the plaintiff's own factual assertions set out in its complaint." *Global Network*, 458 F.3d at 156; *see also Jackson*, 552 F. Supp. 3d at 368 (declining to "consider these external materials to controvert the factual assertions set forth in Plaintiff's" complaint of false arrest and malicious prosecution); *Joyner*, 2020 WL 1904088, at *3 (declining to consider extrinsic documents that contradict plaintiff's complaint of false arrest as "[t]o accept the truth of the documents offered by Defendants at this stage would amount to a premature determination that the arresting officers and the alleged victim are more credible than Plaintiff").

Accordingly, the Court will consider the Report but declines to consider the Receipt in deciding the Motion.

6

## II.     False Arrest

Plaintiff's first cause of action alleges that Defendants detained and charged Plaintiff without probable cause in violation of the Fourth and Fourteenth Amendments.  Compl. ¶¶ 72–76.  "A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause is substantially the same as a claim for false arrest under New York law."  *Burden v. Inc. Vill. of Port Jefferson*, No. 21-cv-4967, 2023 WL 2632453, at *5 (E.D.N.Y. Mar. 24, 2023).  "It is well-settled that in an action under 42 U.S.C. § 1983, where probable cause is shown to have existed for a challenged arrest, a law officer cannot be found to have violated the arrestee's constitutional rights as a consequence of that arrest."  *Udechukwu v. City of New York*, 333 F. Supp. 3d 161, 166 (E.D.N.Y. 2018).  This is because "[p]robable cause is a complete defense to a constitutional claim of false arrest."  *May v. Levy*, No. 21-cv-3586, 2023 WL 2386380, at *8 (E.D.N.Y. Mar. 7, 2023).  "In general, probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime."  *Udechukwu*, 333 F. Supp. 3d at 166.  "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest."  *Id*.  At the same time, the arresting officer should conduct a "rudimentary inquiry" into "readily ascertainable . . . facts tending to dissipate probable cause."  *Hernandez v. United States*, 939 F.3d 191, 201 (2d Cir. 2019).  Plaintiff was arrested for Criminal Mischief in the Fourth Degree.  Compl. ¶ 57.  A person is guilty of Criminal Mischief in the Fourth Degree under New York law when, "having no right to do so nor any reasonable

7

ground to believe that he or she has such right, he or she intentionally damages property of another person." N.Y.P.L § 145.00.

Defendants argue that Plaintiff's false arrest claim "fails as a matter of law because at the time of plaintiff's arrest, the defendants had the requisite probable cause necessary to do so." ECF No. 15 at 5.  Specifically, Defendants argue that Plaintiff's ex-wife's complaint, along with "a credit card receipt which supported her report that she purchased the broken laptop"—established probable cause. *Id*. at 9–10.  However, as discussed above, the Receipt was not attached to, incorporated by reference, nor integral to Plaintiff's Complaint.  Defendants implicitly concede that the Receipt is necessary for establishing probable cause, noting that "[o]nce *[Plaintiff's ex-wife] provided the officers with a credit card receipt which supported her report* that she purchased [the laptop] there was sufficient evidence to establish probable cause for plaintiff's arrest for Criminal Mischief in the Fourth Degree." *Id* (emphasis added).  Without the Receipt, there is no evidence that the Defendants performed any inquiry into whose property was destroyed sufficient to establish probable cause for arresting Plaintiff for Criminal Mischief in the Fourth Degree.  Consequently, if the Court limits itself to the materials contained in the pleadings, Plaintiff has plausibly alleged that Defendants lacked probable cause.

Accordingly, because the Court must "draw[] all reasonable inferences in favor of" Plaintiff, it cannot hold as a matter of law at the pleading stage that Defendants had probable cause to arrest the Plaintiff, *Palmer v. Amazon.com, Inc.*, 51 F.4th 491, 503 (2d Cir. 2022), and denies the Motion with respect to the false arrest claim.

### III. Malicious Prosecution

Plaintiff's second cause of action is for malicious prosecution. Compl. ¶¶ 77–86. "To prevail on a § 1983 claim for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment and must establish the elements of a malicious prosecution claim under state law." *Zubko-Valva v. Cnty. of Suffolk,* 607 F. Supp. 3d 301, 316 (E.D.N.Y. 2022). "Under New York law, the elements of a malicious prosecution claim are: (1) that the defendant initiated a prosecution against the plaintiff, (2) that the defendant lacked probable cause to believe the proceeding could succeed, (3) that the defendant acted with malice, and (4) that the prosecution was terminated in the plaintiff's favor." *Id.* "Claims for malicious prosecution require a plaintiff to allege, . . . lack of probable cause, [and] that the proceeding was instituted with malice." *Johnson v. City of N.Y.*, No. 22-2096, 2023 WL 3607219, at *3 (2d Cir. May 24, 2023). "The probable cause standard in the malicious prosecution context is slightly higher than the standard for false arrest cases" and requires "such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." *Id.* at 2.

Plaintiff was charged with Criminal Mischief in the Fourth Degree, Endangering the Welfare of a Child, and Harassment in the Second Degree. Compl. ¶ 61. A person is guilty of Endangering the Welfare of a Child under New York law when "he or she knowingly acts in a manner likely to be injurious to the physical, mental or moral welfare of a child less than seventeen years old . . ." N.Y.P.L § 260.10 (1). A person is guilty of Harassment in the Second Degree under New York law "when, with the intent to harass, annoy or alarm another person . . . (1) he or she strikes, shoves, kicks, or otherwise subjects such other person to physical contact, or attempts or threatens to do the same; or . . . (3) he or she engages in a course of conduct or

9

repeatedly commits acts which alarm or seriously annoy such other person and which serve no legitimate purpose." N.Y.P.L. § 240.26.

Defendants argue that Plaintiff's ex-wife's "detailed account of plaintiff's actions that she provided to the police, coupled with the supporting receipt proving she purchased the laptop, helped to form the probable cause necessary to prosecute plaintiff for all three crimes." ECF No. 15 at 13. As noted above, the Court finds that Plaintiff has barely alleged that there was no probable cause to arrest him. As the probable cause standard is "slightly higher" for malicious prosecution, *Johnson*, 2023 WL 3607219, at \*2, Plaintiff has thus plausibly alleged there was no probable cause to prosecute him. *Othman v. City of New York*, No. 13-cv-4771, 2018 WL 1701930, at \*12 (E.D.N.Y. Mar. 31, 2018) ("When an arrest is made without a warrant and justification for the arrest has not been demonstrated, the absence of probable cause element is satisfied for the malicious prosecution claim.").

Specifically, the Court finds Plaintiff has plausibly pled that Defendants overly relied upon the statements of Plaintiff's ex-wife. "Probable cause exists if a law enforcement officer received information from some person, normally the putative victim or eyewitness, unless the circumstances raise doubt as to the person's veracity." *Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014). While the Report may have established probable cause, the Court finds that circumstances changed when Plaintiff sent his letter to Detectives contradicting a "readily ascertainable fact" in the Report—who owned the laptop Plaintiff destroyed. *Hernandez,* 939 F.3d at 201. Plaintiff disputes that the laptop was owned by his ex-wife, *see* Compl. ¶¶ 21, 26, 31–34; ECF No. 19 at 13, explicitly contradicting what she claimed in the Report, *see* ECF No. 14-2. It was the responsibility of the officers to conduct a rudimentary inquiry into this fact,

10

*Hernandez,* 939 F.3d at 201, which, once identified as a falsehood, could have plausibly "raise[d] doubt as to [Plaintiff's ex-wife's] veracity" sufficient to dissipate probable cause for all the crimes Plaintiff was charged with. *Bets*, 751 F.3d at 82.

Defendants further argue that "there are no facts in evidence that indicate defendants were motivated by actual malice." ECF No. 15 at 13. However, "[a] lack of probable cause generally creates an inference of malice." *Suren v. City of New York,* No. 19-CV-2659, 2022 WL 4466098, at *11 (E.D.N.Y. Sept. 26, 2022). Here, because the Court has already found that Plaintiff has plausibly alleged a lack of probable cause to arrest and charge him, it finds that Plaintiff has plausibly alleged at this stage sufficient facts to establish an inference of malice.

Accordingly, Defendants' Motion with respect to the malicious prosecution claim is denied.

### IV. Familial Association

Plaintiff's third cause of action is for intentional interference with a familial relationship. Compl. ¶¶ 87–93. "The right to intimate association protects the close ties between individuals from inappropriate interference by the power of the state." *Chi Iota Colony of Alpha Epsilon Phi Fraternity v. C.U.N.Y.*, 502 F.3d 136, 143 (2d Cir. 2007). "Constitutional protection for associational interests are at their apogee when close family relationships are at issue." *Patel v. Searles*, 305 F.3d 130, 137 (2d Cir. 2002). The "parent/child relationship . . . [is] among the most intimate . . . and warrant[s] the highest level of constitutional protection." *Id*. at 136. "To state a claim for infringement of this right, a plaintiff must allege conduct so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection." *Lara-Grimaldi v. Cnty. of Putnam*, No. 17-cv-622, 2019 WL

3499543, at *3 (S.D.N.Y. Aug. 1, 2019).  Additionally, "because only deliberate conduct implicates due process, a plaintiff must allege that the state action was specifically intended to interfere *with the family relationship*."  *Id*. (emphasis in original).

First, the Court struggles to identify how arresting Plaintiff plausibly interfered with his relationship with his child in a way that the Court could find "shocking, arbitrary, and egregious."  *Lara-Grimaldi*, 2019 WL 3499543, at *3.  Plaintiff argues that "[i]n the absence of any legitimate state interest to arrest plaintiff, defendants' actions become the type of 'shocking, arbitrary, and egregious' behavior that violated plaintiff's substantive due process right" of familial association."  ECF No. 19 at 22.  However, the Court has found no authority supporting this contention, and Plaintiff points to none.  Rather, cognizable claims for familial association appear to require truly egregious conduct, for example:  "when the state separates family members during a critical and traumatic moment," *Albert v. City of N.Y.*, No. 17-cv-3957, 2018 WL 5084824, at *8 (E.D.N.Y. Oct. 18, 2018); when the state disseminates false information to family members that causes them to believe that plaintiff murdered his mother and sister, *see Patel*, 305 F.3d 130; or when a school subjected plaintiffs' children to religious indoctrination which resulted in the children alienating their parents, *Doe v. Mastoloni*, No. 14-cv-00718, 2016 WL 593439, at *11 (D. Conn. Feb. 12, 2016).  Here, there is no allegation that Defendants ever had any interaction with Plaintiff's child—in fact, the Complaint explicitly alleges that Defendants never spoke to TE.  Compl. ¶ 80 ("Defendants never even spoke to TE about the underlying facts").  Nor does Plaintiff allege that the arrest took place in a way that was designed to separate Plaintiff from his child—Plaintiff was arrested outside of the presence of his child, weeks after the incident, at an agreed upon time.  The Court does not find these allegations

sufficiently shocking, arbitrary, and egregious to plausibly allege intentional interference with Plaintiff's familial relationship.

Furthermore, while the Complaint alleges, in wholly conclusory fashion, that the "conduct of Defendants was intentional," Compl. ¶ 93, the Court agrees with Defendants that the Complaint "fails to allege how either of the individual defendants specifically intended to target his relationship with his son." ECF No. 15 at 20. Plaintiff alleges that his relationship with his child has been interfered with because his ability to discipline his child by, for example, taking away his electronics, has been "chilled" by the arrest because it has placed "Plaintiff in fear" of disciplining his child. Compl. ¶ 92. Plaintiff argues that "it is difficult to see what other intent defendants could have had" other than intentionally interfering with his relationship with his son. ECF No. 19 at 22. However, the Complaint itself acknowledges another intent Defendants could have had: Defendants claimed they were arresting him for destroying property that they, perhaps unreasonably, believed was not his. *Id.* ¶ 41 ("Detective Binns likewise informed Mr. Ekeland's attorney that Mr. Ekeland was being arrested for violating New York Penal Law Section 145.00, Criminal Mischief in the Fourth Degree, stemming from his having allegedly broken *TE's* computer and headphones") (emphasis in original). Therefore, even after "drawing all reasonable inferences in favor of" Plaintiff, the Court finds that Plaintiff has not met the high pleading standard needed to establish that Defendants intentionally interfered with his familial relationship. *Palmer*, 51 F.4th at 503.

Accordingly, Plaintiff's familial association claim is dismissed.

### V. Qualified Immunity

With respect to Plaintiff's surviving claims of False Arrest and Malicious Prosecution, Defendants argue that "plaintiff's claims must nevertheless be dismissed as defendants are entitled to qualified immunity." ECF No. 15 at 17. A "qualified immunity defense is often a mismatch for a motion to dismiss and a bad ground of dismissal." *Zarkower v. City of N.Y.*, 461 F. Supp. 3d 31, 36 (E.D.N.Y. 2020). "However, [it is] appropriate . . . when entitlement to qualified immunity can be established based solely on facts appearing on the face of the complaint." *Id.* at 36–37. Additionally, "the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004). Accordingly. "if a court lacks enough information to make a probable cause determination at the motion to dismiss stage, it must deny the motion." *Kaplan v. Cnty. of Orange*, 528 F. Supp. 3d 141, 163 (S.D.N.Y. 2021).

"A police officer is entitled to qualified immunity from liability for his discretionary actions if either (1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act." *Simpson v. City of N.Y.*, 793 F.3d 259, 268 (2d Cir. 2015). As it pertains to probable cause, "[a]n arresting officer is entitled to qualified immunity even if probable cause is lacking so long as arguable probable cause was present when the arrest was made." *Washington v. Napolitano*, 29 F.4th 93, 105 (2d Cir. 2022). "A police officer has arguable probable cause if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Id*. "The right not to

14

be arrested or prosecuted without probable cause has, of course, long been a clearly established constitutional right." *Buari v. City of N.Y.*, 530 F. Supp. 3d 356, 396 (S.D.N.Y. 2021).

Here, as discussed above, the Court has already found that Plaintiff has plausibly, but barely, alleged that there was no probable cause at the time of his arrest. Accordingly, while the result may be different at the summary judgment stage, the Court cannot hold in deciding a motion under Rule 12(c) that sufficient facts supporting the defense of qualified immunity appear on the face of the Complaint. *Zarkower*, 461 F. Supp. 3d at 36.

## CONCLUSION

For the foregoing reasons, the Motion is GRANTED as to Plaintiff's familial association claim and DENIED as to Plaintiff's other claims.

SO ORDERED.

/s/ Hector Gonzalez
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
June 14, 2023